ROBERT S. BREWER, JR.
United States Attorney
NICHOLAS J. HERNANDEZ
Assistant U.S. Attorney
New York Bar No. 5185277
United States Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101
(619) 546-7029
Nicholas.Hernandez@usdoj.gov
Attorneys for the United States

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ASHLEY SUSAN MAHER,<br><br>    Defendant. | Case No.:  20-CR-1586-GPC<br><br>RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION:<br><br>(1) TO COMPEL DISCOVERY;<br>(2) PRESERVE EVIDENCE AND RECEIVE A DISCOVERY LOG; AND<br>(3) LEAVE TO FILE FURTHER MOTIONS<br><br>DATE:  October 9, 2020<br>TIME:  10:30 a.m. |

The plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Robert S. Brewer, Jr., United States Attorney, and Nicholas J. Hernandez, Assistant United States Attorney, hereby files its Response in Opposition to Defendant's Motion to Compel Discovery, Preserve Evidence and Receive a Discovery Log, and Leave to File Further Motions.

# I
# STATEMENT OF FACTS

On May 12, 2020, Ashley Susan Maher ("Defendant") attempted to enter the United States from Mexico at the San Ysidro, California Port of Entry in the vehicle lanes. Defendant was the driver and sole occupant of black 2017 Honda CRV with California license plates. At pre-primary inspection, Defendant provided two negative customs declarations to Customs and Border Protection Officers ("CBPO") but was referred to secondary because of a computer-generated alert on the vehicle. In secondary inspection, a narcotic dog alerted to the floor of the vehicle and upon further inspection, an aftermarket compartment built into the vehicle floor was discovered. Upon removing the bolts holding down the front seats, CBPOs discovered multiple plastic wrapped packages. In total, 105 plastic wrapped packages were recovered from the aftermarket compartment and tested positive for characteristics of methamphetamine. The total net weight of the methamphetamine was 43.72 kilograms (96.38 pounds). Defendant was subsequently given a Notice to Appear on August 4, 2020.

# II
# MOTION TO COMPEL DISCOVERY AND RECEIVE A DISCOVERY LOG

To date, the United States has produced 102 pages of written discovery, to include the reports of the arrest and Defendant's conviction records, and two DVDs including the recorded post-arrest statement and port of entry video. The United States acknowledges its continuing obligation to preserve and disclose exculpatory evidence as required by the United States Constitution, Federal Rules of Evidence, *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972); the Jencks Act; and the Federal Rules of Criminal Procedure, and will abide by their dictates. The United States will abide by its obligations to produce

and preserve all discovery that the assigned prosecutor has knowledge of and access to and opposes the production of a discovery log.

Furthermore, in view of the position of the United States concerning discovery stated below, the United States respectfully requests that the Court not issue any orders compelling specific discovery or preserving evidence from the United States at this time.

*1. Defendant's Statements*

The Government has complied, and will continue to comply, with FED. R. CRIM. P. 16(a)(1)(A) and 16(a)(1)(B) by providing all of Defendant's statements that are known to the United States. The United States recognizes its obligations under Rule 16(a)(1)(A) to disclose the "substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial." FED. R. CRIM. P. 16(a)(1)(A). If additional reports by law enforcement agents come to light, the United States will supplement its discovery and provide those reports to defendant.

The Government objects, however, to providing defendant with a copy of any handwritten notes of government agents summarizing oral statements made by defendant. Rule 16(a)(1)(A) does not require disclosure of such rough notes where the content of those notes has been accurately reflected in a type-written report. *See United States v. Brown*, 303 F.3d 582, 590 (5th Cir.2002); *United States v. Coe*, 220 F.3d 573, 583 (7th Cir.2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report).

The United States also objects to any request for the production of any rough notes because they are not "statements" within the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness's

assertions and they have been approved or adopted by the witness. *See United States v. Alvarez*, 86 F.3d 901, 906 (9th Cir.1996); *United States v. Bobadilla-Lopez*, 954 F.2d 519 (9th Cir.1992). Moreover, the production of agents' notes is not required under Rule 16 because the United States has already provided, or will shortly provide, "defendant with copies of the formal interview reports prepared therefrom." *United States v. Griffin*, 659 F.2d 932, 941 (9th Cir. 1981). Finally, the United States considers the rough notes of its agents to be work product, which FED. R. CRIM. P. 16(a)(2) specifically exempts from disclosure.

Additionally, Defendant's post-arrest statement was produced in discovery on May 20, 2020.

2. *Arrest Reports, Agent Notes, and Dispatch Tapes*

The Defendant requests all arrest reports, notes, dispatch or any other tapes and records that related to the circumstances surrounding Defendant's arrest or questioning. To date, the United States has provided all arrest reports and has produced the port video prior to Defendant's crossing.

Agent rough notes will be preserved, but they will not be produced as part of Rule 16 discovery. A defendant is not entitled to rough notes because they are not "statements" within the meaning of the Jencks Act unless they comprise a substantially verbatim narrative of a witness' assertions or have been approved or adopted by the witness. See 18 U.S.C. § 3500(e)(1); *United States v. Augenblick*, 393 U.S. 248, 354 (1969); *United States v. Bobadilla-Lopez*, 954 F.2d 519, 522 (9th Cir. 1992); *United States v. Miller*, 771 F.2d 1219, 1231-31 (9th Cir. 1985); *United States v. Griffin*, 659 F.2d 932 (9th Cir. 1981); *United States v. Spencer*, 618 F.2d 605 (9th Cir. 1980); *United States v. Griffin*, 659 F.2d 932 (9th Cir. 1981); *United States v. Friedman*, 593 F.2d 109, 120 (9th Cir. 1979).

//

//

*3. Brady Material*

The United States has complied, and will continue to comply, with its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). Under *Brady*, the United States must disclose material exculpatory information or evidence favorable to the defendant when such evidence is material to guilt or punishment. However, the United States does not need to disclose "every bit of information that might affect the jury's decision." *United States v. Gardner*, 611 F.2d 770, 774-75 (9th Cir. 1980). The standard for disclosure is materiality. Id. "Evidence is material under Brady only if there is a reasonable probability that the result of the proceeding would have been different had it been disclosed to the defense." *United States v. Antonakeas*, 255 F.3d 714, 725 (9th Cir. 2001).

The United States recognizes that its obligation under *Brady* covers not only exculpatory evidence, but also evidence that could be used to impeach witnesses who testify on behalf of the United States. *See Giglio*, 405 U.S. at 154; *see also United States v. Bagley*, 473 U.S. 667, 676-77 (1985). The United States recognizes its obligation to provide information related to the bias, prejudice or other motivation of its trial witnesses as mandated in *Napue v. Illinois*, 360 U.S. 264 (1959). The United States will provide such impeachment material in its possession, if any exists, at the time it files its trial memorandum, although it is not required to produce such material until after its witnesses have testified at trial or at a hearing. *See United States v. Bernard*, 623 F.2d 551, 556 (9th Cir. 1979).

The United States objects to any argument to disclose information affecting Defendant's sentencing guidelines because such information is discoverable under *Brady v. Maryland*, 373 U.S. 83 (1963). The United States respectfully disagrees. The United States is not obligated under *Brady* to furnish a defendant with information which she already knows. *See United States v. Taylor*, 802 F.2d 1108,

1118 n.5 (9th Cir.1986). *Brady* is a rule of disclosure, and therefore, there can be no violation of *Brady* if the evidence is already known to defendant. In such case, the United States has not suppressed the evidence and consequently has no *Brady* obligation. *See United States v. Gaggi*, 811 F.2d 47, 59 (2d Cir.1987).

But even assuming Defendant does not already possess the information about factors which might affect her guideline range, the United States would not be required to provide information bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior to her sentencing date. *See United States v. Juvenile Male*, 864 F.2d 641, 647 (9th Cir.1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value.").

*4. Giglio Information*

The United States will comply with its obligations to disclose impeachment evidence under *Giglio v. United States*, 405 U.S. 150 (1972). The Government will also disclose the terms of any agreements by Government agents, employees, or attorneys with witnesses that testify at trial. Such information will be provided at or before the time of the filing of the Government's trial memorandum.

*5. Proposed 404(b) Evidence and 609 Evidence*

The United States has disclosed the information it has regarding Defendant's criminal history, as contained in criminal rap sheet summaries. Should the United States receive additional information regarding the Defendant's criminal history, it will disclose such records as well. See FED. R. CRIM. P. 16(a)(1)(D).

The United States will comply with its obligations under FED. R. EVID. 404(b) and 609. Pursuant to Rules 404(b) and 609, the United States will provide Defendant with reasonable notice before trial of the general nature of the evidence of any extrinsic acts that it intends to use at trial. See FED. R. EVID. 404(b), advisory committee's note ("[T]he Committee opted for a generalized notice

6

provision which requires the prosecution to appraise the defense of the general nature of the evidence of extrinsic acts. The Committee does not intend that the amendment will supersede other rules of admissibility or disclosure[.]"). The United States understands that its obligations under Rule 404(b) extend to TECS records. See United States v. Vega, 188 F.3d 1150, 1154-55 (9th Cir.1999).

*6. Evidence Seized and Tangible Objects*

The United States has complied and will continue to comply with FED. R. CRIM. P. 16(a)(1)(E) in allowing Defendant an opportunity, upon request and reasonable notice, to examine, photograph, inspect, and copy all evidence seized and/or tangible objects that are within the possession, custody, or control of the United States, and that are either material to the preparation of Defendant's defense, or are intended for use by the United States as evidence during its case-in-chief, or were obtained from or belongs to Defendant. The United States need not, however, produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir.1984).

Reasonable efforts will be made to preserve relevant physical evidence which is in the custody and control of the investigating agency and the prosecution and an opportunity to view all evidence seized from Defendant as a result of arrest will be afforded to Defendant. The United States will afford Defendant the opportunity to view and inspect the contraband seized in this case, will provide a copy of the download from Defendant's phone, and allow Defendant an opportunity to inspect the personal property seized at arrest, and view the vehicle. Additionally, the United States has provided the video of the Defendant's entry at the San Ysdiro, California Port of Entry and the search warrant executed on Defendant's phone seized at her arrest. The United States will promptly make available the download of Defendant's phone.

//

*7. Henthorn Material*

The United States will continue to comply with *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991), by requesting that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. *See United States v. Booth*, 309 F.3d 566, 574 (9th Cir. 2002). If the materiality of incriminating information in the personnel files is in doubt, the information will be submitted ex parte to the Court for an in camera inspection and review. To the extent that Defendant requests that the specific prosecutor in this case review the personnel files, that request is unwarranted and unnecessary. *Henthorn* expressly provides that it is the "government," not the prosecutor, which must review the personnel files. *Henthorn*, 931 F.2d at 30-31. Accordingly, the United States will utilize its typical practice for review of these files, which involves requesting designated representatives of the relevant agencies to conduct the reviews. The United States opposes any request for an order that the prosecutor personally review the personnel files

*8. Evidence of Criminal Investigation*

The United States would object to any overbroad request for evidence of criminal investigations by federal, state, or local authorities into prospective Government witnesses. The United States is unaware of any rule of discovery or Ninth Circuit precedent that entitles Defendant to any and all evidence that a prospective Government witness is under investigation by federal, state or local authorities. Moreover, as discussed above, the United States has no obligation to disclose information not within the possession, custody or control of the prosecution team in this matter. *See United States v. Gatto*, 763 F.2d 1040, 1048

(9th Cir.1985); *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir.1991) (California state prisoner's files outside of federal prosecutor's possession); *United States v. Chavez-Vernaza*, 844 F.2d 1368, 1375 (9th Cir.1987) (holding the federal government had no duty to obtain from state officials documents of which it was aware but over which it had no actual control); cf. *Beaver v. United States*, 351 F.2d 507 (9th Cir.1965) (Jencks Act refers to "any statement" of a witness produced by United States which is in possession of United States and does not apply to a recording in possession of state authorities).

The United States recognizes and will comply with its obligations under the rules of discovery and Ninth Circuit precedent to disclose exculpatory and impeachment information. The United States also recognizes its obligation to provide information—if any exists—related to the bias, prejudice or other motivation of its trial witnesses, as mandated in *Napue v. Illinois*, 360 U.S. 264 (1959), when it files its trial memorandum.

9. *Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling*

The United States objects to this request as vague and overbroad. Notwithstanding the objection, the United States is unaware of any evidence concerning a prospective Government witness's inability to perceive, recollect, communicate, or tell the truth. Should the United States become aware of such evidence, it will be disclosed if required by *Brady* or *Giglio*.

10. *Preservation of Materials*

The United States has taken steps to preserve the evidence in this case including the narcotics, vehicle, port of entry video, and personal property of Defendant. Accordingly, a Court order regarding preservation is not necessary at this time. Moreover, the United States will try to preserve all evidence to which Defendant is entitled, but objects to any global request for preservation of all

evidence as contrary to *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988) (finding it improper to impose on the government "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution).

11. *Expert Witnesses*

Pursuant to FED. R. CRIM. P. 16(a)(1)(G), at or about the time of filing its trial memorandum, the Government will provide Defendant with notice of any expert witnesses the testimony of whom the Government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence in its case-in-chief. Such notice will describe the witnesses' opinions, the bases and the reasons therefore, and the witnesses' qualifications. The Government requests that Defendant provide reciprocal notice of its expert witnesses pursuant to FED. R. CRIM. P. 16(b)(1)(C).

12. *Reports of Scientific Tests or Examinations*

The DEA lab report, along with the chemist notes, will be produced promptly. The United States does not anticipate further testing, but will produce the results should other testing exist.

13. *Jencks Act Material*

The United States will fully comply with its discovery obligations under the Jencks Act. For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness' oral statement, or (3) a statement by the witness before a grand jury. *See* 18 U.S.C. § 3500(e). Notes of an interview only constitute statements discoverable under the Jencks Act if the statements are adopted by the witness, as when the notes are read back to a witness to see whether or not the Government agent correctly understood

what the witness said. *See United States v. Boshell*, 952 F.2d 1101, 1105 (9th Cir.1991). In addition, rough notes by a Government agent "are not producible under the Jencks Act due to the incomplete nature of the notes." *United States v. Cedano-Arellano*, 332 F.3d 568, 571 (9th Cir.2004).

Production of this material need only occur after the witness making the statements testifies on direct examination. *See United States v. Robertson*, 15 F.3d 862, 873 (9th Cir.1994). Indeed, even material that is potentially exculpatory (and therefore subject to disclosure under *Brady*) need not be revealed until such time as the witness testifies on direct examination if such material is contained in a witness's Jencks Act statements. *See United States v. Bernard*, 623 F.2d 551, 556 (9th Cir. 1979). Accordingly, although the United States anticipates providing most, if not all, Jencks material well in advance of trial, it reserves the right to withhold Jencks statements of any particular witness it deems necessary until after the witness testifies.

*14. TECS Records and Computer Generated Referral*

The United States will produce the TECS records associated with Defendant and the vehicle of arrest promptly. Those records will include the computer-generated referral from the date of Defendant's arrest.

*15. Video Footage and Photographs of Defendant*

The United States has produced photographs and video discovery of Defendant from her entry at the port, her arrest, and the post-arrest interview.

*16. Residual Request*

The United States has no opposition to Defendant's residual request.

//
//
//
//

11

## III

## MOTION TO PRESERVE EVIDENCE

The United States has taken steps to preserve the evidence in this case including the narcotics, vehicle, port of entry video, and personal property of Defendant. Accordingly, a Court order regarding preservation is not necessary at this time. Moreover, the United States will try to preserve all evidence to which Defendant is entitled, but objects to any global request for preservation of all evidence as contrary to *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988) (finding it improper to impose on the government "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution").

## IV

## MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS

The United States does not oppose the filing of additional motions so long as those motions are based upon newly-produced discovery or newly-obtained evidence and the United States is given an opportunity to respond.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that, except where unopposed, Defendant's Motions be denied.

DATED:      September 29, 2020.            Respectfully submitted,

                                                       ROBERT S. BREWER
                                                      United States Attorney

                                                      */s/ Nicholas J. Hernandez*
                                                      Nicholas J. Hernandez
                                                      Assistant U. S. Attorney