**JESSICA J. OLIVA**
California State Bar No. 312435
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Facsimile: (619) 687-2666
Jessica_Oliva@fd.org

Attorneys for Ms. Ashley Susan Maher

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ASHLEY SUSAN MAHER,<br>Defendant. | CASE NO.: 20-CR-1586-GPC<br><br>Hon. Gonzalo P. Curiel<br>Courtroom 2D<br>Date: October 4, 2021<br>Time: 9:00 a.m.<br><br>MS. MAHER'S SENTENCING MEMORANDUM |

**To:** **Randy S. Grossman,** United States Attorney; and
**Patrick C. Swan,** Assistant United States Attorney:

Ms. Ashley Susan Maher, by and through her counsel, Jessica J. Oliva and Federal Defenders of San Diego, Inc., hereby files her sentencing memorandum respectfully requesting that the Court impose a sentence of eighteen months.

## I. Procedural Background

On May 12, 2020, Ms. Maher was arrested at the San Ysidro Port of Entry when Customs and Border Protection Officers discovered drugs in the car she was driving. On February 22, 2021, Ms. Maher pled guilty to a one-count information charging her with importation of methamphetamine. A Pre-Sentence report was filed on April 13, 2021.

## II. Mr. Ashley Susan Maher

Ms. Maher has lived with a methamphetamine addiction for over twenty

years—an addiction that began when she was just a teenager. Yet, Ms. Maher is not a hardened criminal. She is a smart, self-aware woman who remains hopeful that it is not too late to get clean and make a change. She is respectfully requesting that the Court impose a sentence of eighteen months, coupled with a condition that she complete a residential drug treatment program.

**A. Ms. Maher's childhood and addiction**

Though Ms. Maher describes her childhood as "fine," her young life was filled with abuse and addiction. As a child, her parents financially struggled because of her mother's gambling issues. After the family lost their home and moved to a trailer park, Ms. Maher began to drink, skip school, experiment with drugs, and spend time with negative influences. When Ms. Maher was just fifteen years old, she moved out from her family home and in with her boyfriend—a drug dealer who was thirty-four years older than she was. Sadly, no one in her family asked questions or attempted to bring her back home. Because he cooked and sold methamphetamine out of his home, by sixteen, Ms. Maher developed a severe addiction. During the seven years that Ms. Maher lived with this man, she suffered both physical and emotional abuse. She used methamphetamine daily, which caused her to lose nearly all of her teeth by the time she turned twenty-three. She lost two children—one through adoption and another at birth. Ms. Maher's nightmare last for years until her boyfriend was arrested and sentenced to prison.

After his arrest, Ms. Maher began to turn her life around with her grandmother's help. Her grandmother took Ms. Maher in, motivated her to obtain her GED, paid for her dental surgery, and enrolled her in A.A. and N.A. meetings. Despite never receiving formal drug treatment, Ms. Maher remained clean for eight years. During this time, she learned how to provide for herself and worked full time for the same employer for nearly ten years. She was a trusted and well-liked employee. She also regularly attended meetings and was proud of the progress she made.

Unfortunately, Ms. Maher's life took a downturn once again when she met her

most recent ex-boyfriend. At first, he seemed like a caring and loving partner. They both attended N.A. meetings together. With time, however, he became both emotionally and physically abusive. His abuse ranged from choking Ms. Maher until she lost consciousness to forcing her to dig a grave and lie in it as a means of warning her. For years, Ms. Maher suffered at the hands of her ex-boyfriend. She struggled to ask for help, but when she did, the police often accused her of being the aggressor. Eventually, Ms. Maher lost her job and stability. Hopeless, she relapsed and turned to a tried and true method of numbing her pain—methamphetamine. She used on a daily basis for years until she self-surrendered in this case.

Ms. Maher has struggled with her addiction for over twenty years—an addiction that is the direct result of her adverse childhood trauma. And while she by no means attempts to minimize her own responsibility, as the Honorable Myron H. Thompson from the District of Alabama has determined, a defendant's severe childhood trauma and substance abuse disorder can have mitigating effects on culpability. *See United States v. Mosley*, 277 F. Supp. 1294, 1298 (M.D. Ala. 2017) ("Substance use disorders are a recognized class of 'mental disorder,' listed in the American Psychiatric Association's Diagnostic and Statistical Manual–V ("DSM–V") alongside other categories such as Schizophrenia Spectrum and Other Psychotic Disorders, Bipolar and Related Disorders, and Depressive Disorders. As the National Institute on Drug Abuse explains, drug addiction is a mental illness 'because addiction changes the brain in fundamental ways, disturbing a person's normal hierarchy of needs and desires and substituting new priorities connected with procuring and using the drug. The resulting compulsive behaviors that override the ability to control impulses despite the consequences are similar to hallmarks of other mental illnesses.' Nat'l Inst. On Drug Abuse, *Is Drug Addiction a Mental Illness?* available at https://www.drugabuse.gov/publications/research-reports/comorbidity-addiction-other-mental-illnesses/drugaddiction-mental-illness (last visited Sept. 22, 2017)"); *See also United States v. Carter*, No. 2:20cr12-MHT, 2020 WL 7312182 * 15 (M.D. Ala. Dec.

11, 2020) ("Ignoring the effects of childhood trauma would needlessly limit this acknowledgment to people who experience trauma. This strikes the court as particularly inappropriate in light of the apparent impacts of childhood trauma on brain development and functioning.").

In the four years leading up to her arrest, Ms. Maher fell deeper and deeper into her addiction. Years of abusive relationships left her struggling to find self-worth. In the grip off her addiction and despair, Ms. Maher regrettably agreed to become a courier.

**B. The future.**

Since her self-surrender in January, Ms. Maher has had nothing but time to reflect on the road she was headed down. Prior to this case, the longest term of custody Ms. Maher had served was a month. Certainly, that time did not prepare her for what custody would be like during a global pandemic. Ms. Maher has spent nearly her entire time in custody in lockdown, unable to receive family and legal visits, and restricted to her cell during the majority of the day. Ms. Maher understands the severity of her actions and that they merit some consequence. She would like to take further advantage of her time while in custody and complete the Residential Drug Abuse Program ("RDAP"). However, because she has outstanding state warrants that defense counsel was unable to clear, she is ineligible for treatment. As a result, Ms. Maher hopes to enroll in residential treatment once released. Her goal is to stay clean and once again feel proud of herself.

For the first time in five years, Ms. Maher is sober—truly sober. Tired with the life she has lived, she acknowledges the damage methamphetamine has caused in her life. And though her road to sobriety will continue to be difficult, with the love and support of her family friends, she is hopeful for a permanent change. *See* Exhibit A.

**III. The Guidelines**

**A. The Court should grant minor role in this case.**

This case constitutes Ms. Maher's first and only attempt to cross drugs into the United States. Like many of the drug couriers in this district, Ms. Maher operated at

the direction of her recruiter. Though Ms. Maher imported drugs, she did so after attempting to back out of her agreement to drive a car across the border. Ms. Maher had originally agreed to drive a car from California to Colorado for her recruiter. Once she arrived in California, her recruiter changed the plans and offered her more money to drive a car from Tijuana to California. Ms. Maher was desperate for money and under the influence when she regrettably agreed. Once she arrived in Tijuana, she quickly regretted her decision. She insisted she no longer wanted to drive a loaded car across the border. To ease her concerns, her recruiter and his son told her that she would instead be driving a different, unloaded car across the border. However, Ms. Maher remained highly suspicious that the car they provided her with contained drugs in it. Because she was desperate to get home, she drove the car and chose not to ask any further questions.

Both Ms. Maher and the government urge the Court to grant a minor role departure in this case, as the factors weigh in favor of a role adjustment:

- ✓ *The degree to which the defendant understood the scope and structure of the criminal activity*. None. Ms. Maher only knew her recruiter and his son, and she was deliberately kept in the dark about the scope and structure of the organization.
- ✓ *The degree to which the defendant participated in planning or organizing the criminal activity*. None—Her recruiter made all the arrangements and simply gave Ms. Maher instructions on how to complete them.
- ✓ *The degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority*. None— She just followed her recruiter's instructions and made no independent decisions about the operation of the scheme.
- ✓ *The nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts*. Ms. Maher served the very limited

role of driving the load vehicle across the border; she had no role in supplying, loading, or distributing the cargo. Moreover, she had no discretion on how to carry out her limited task.

✓ *The degree to which the defendant stood to benefit from the criminal activity.* None. Though she initially agreed to cross a loaded car, she did not expect to receive compensation after she changed her mind.

**B. Guidelines calculations.**

In this case, Ms. Maher requests the following guidelines calculations:

| | | |
|---|---|---|
| Base offense level: | 38 | U.S.S.G § 2D1.1(a)(5) & (c)(7) |
| Role Cap: | 34 | U.S.S.G. § 2D1.1(a)(5) |
| Acceptance of responsibility: | -3 | U.S.S.G. § 3E1.1(b) |
| Minor role: | -2 | U.S.S.G. § 3B1.2 |
| Fast Track: | -4 | U.S.S.G § 5K3.1 |
| Variance under the First Step Act: | -2 | |
| Final adjusted offense level: | 23 | |
| Criminal history score: | 5 | |
| Criminal History Category: | III | |
| Resulting Guidelines range: | 46-57 months | |

**IV. The Court should grant Ms. Maher a variance from the Guidelines range and sentence her to eighteen months in custody.**

Both the Probation Office and Ms. Maher believe that a variance is warranted in this case. Ms. Maher submits that a variance to an eighteen-month sentence would take into account several factors, including:

- A two-level downward variance for her waiver of any claim that this prosecution violated any prompt presentment of Speedy Trial Act provisions, including 18 U.S.C. § 3161;
- A two-level downward variance under the First Step Act and the Ninth Circuit's recent decision in *United States v. Lopez*, 998 F.3d 431 (9th Cir. 2021);

- Her youth and adverse childhood trauma, which no doubt have had long lasting effects on her life;
- The role her substance abuse issues played in this offense;
- The length and conditions of her incarceration relative to her previous terms of imprisonment;
- Her need for substance abuse and mental health treatment;
- Her inability to enroll in RDAP because of outstanding warrants, despite her commitment to treatment; and
- The support she is receiving from her family and friends.

**V. Conclusion**

In light of Ms. Maher's history and characteristics, her minor role in this offense, and the statutory sentencing factors listed in 18 U.S.C. § 3553(a), she respectfully asks this Court to impose an eighteen-month sentence, coupled with a condition that she complete residential drug treatment.

Respectfully submitted,

Dated: October 4, 2021

*s/ Jessica J. Oliva*

Federal Defenders of San Diego, Inc.
Attorneys for Ms. Ashley Susan Maher

Email: Jessica_Oliva@fd.org